AF Approval ______ Chief Approval ______

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:26-cr-17-TPB-PRL

MARIO CESAR DOS SANTOS, JR.

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, Mario Cesar Dos Santos, Jr., and the attorney for the defendant, Christine N. Bird, Assistant Federal Defender, mutually agree as follows:

## A. Particularized Terms

### 1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Superseding Information. Count One charges the defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. Count Two charges the defendant with Unlawful Use of Government Seals, in violation of 18 U.S.C. § 506(a)(2).

### 2. Maximum Penalties

Count One is punishable by a term of imprisonment of not more than 20 years; a term of supervised release of not more than 3 years; a fine of not more than $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater; and a mandatory special assessment of $100. Count Two

is punishable by a term of imprisonment of not more than 5 years; a term of supervised release of not more than 3 years; a fine of not more than $250,000; and a mandatory special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty.

The elements of Count One are as follows:

First: The defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second: The false pretenses, representations, or promises were about a material fact;

Third: The defendant acted with the intent to defraud; and

Fourth: The defendant transmitted or caused to be transmitted by wire, radio, or television some communication in interstate or foreign commerce to help carry out the scheme to defraud.

The elements of Count Two are as follows:

First: The defendant used, affixed, or impressed to/upon a certificate, document, or paper of any description, the seal of any department or agency of the United States;

Second: The seal that the defendant used, affixed, or impressed was fraudulently made, forged, counterfeited, or altered; and

Third: The defendant did so knowingly.

3. Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6. <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 492 and 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including

direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's

heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment, and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest

or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the

United States Probation Office. Defendant further understands and acknowledges that any discussions between the defendant or the defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw the defendant's plea pursuant to this Plea Agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal the defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.

The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the defendant's complete satisfaction with the representation and advice received from the defendant's undersigned counsel (if any).

The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in the defendant's defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial.

The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel (if any), the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

The defendant also understands that defendant will be adjudicated guilty of the offenses to which the defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

The defendant is pleading guilty because the defendant is in fact guilty. The defendant certifies that the defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were

this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that the defendant fully understands its terms.

DATED this 28 day of August 2026.

GREGORY W. KEHOE
United States Attorney

Mario Cesar Dos Santos, Jr.
Defendant

Belkis Callaos

Belkis H. Callaos
Assistant United States Attorney

Christine N. Bird
Assistant Federal Defender
Attorney for Defendant

Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:26-cr-17-TPB-PRL

MARIO CESAR DOS SANTOS, JR.

PERSONALIZATION OF ELEMENTS

**Count One**:

1. Do you admit that beginning on an unknown date, but no later than in or about July 2025, and continuing through in or about February 2026, in the Middle District of Florida and elsewhere, you knowingly devised or participated in a scheme to defraud individuals by using false or fraudulent pretenses, representations, or promises, as set out in Count One of the Superseding Information?

2. Do you admit that these false pretenses, representations, or promises were about a material fact; namely, that the Chaplain Emergency Management Agency Inc. ("CEMA") was an agency of the United States Government and that by paying for and obtaining CEMA's chaplaincy certificate, identification card, and law enforcement badge, individuals would be allowed to work with FEMA and be protected from immigration-related issues, including deportation?

3. Do you admit that in doing so you acted with the intent to defraud?

4. Do you admit that on December 17, 2025, in the Middle District of Florida and elsewhere, you transmitted or caused to be transmitted by wire some

communication in interstate and foreign commerce to help carry out the scheme to defraud; that is, a message sent via WhatsApp containing an image of a digital flyer advertising a CEMA "Chaplaincy Training Course" being held on December 20, 2025, in Orlando, Florida?

**Count Two:**

1. Do you admit that on September 27, 2025, in the Middle District of Florida, you used, affixed to, and impressed on a certificate, instrument, document, and paper, the seals of the United States Department of Homeland Security, the Federal Emergency Management Agency, and the Federal Bureau of Investigation?

2. Do you admit that those seals were fraudulently made, forged, counterfeited, and altered?

3. Do you admit that you did so knowingly?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:26-cr-17-TPB-PRL

MARIO CESAR DOS SANTOS, JR.

## FACTUAL BASIS

In August 2025, federal authorities began investigating an organization called Chaplain Emergency Management Agency Inc. ("CEMA") and its president, Defendant Mario Cesar Dos Santos, Jr. CEMA identifies itself as a religious and government agency consisting of chaplains that mostly work in emergency situations and alongside the Federal Emergency Management Agency ("FEMA"). As explained below, Dos Santos knowingly used fraudulent government seals, including those of FEMA, the United States Department of Homeland Security ("DHS"), and the Federal Bureau of Investigation ("FBI"), to fraudulently portray CEMA as a federal government agency and charge individuals to attend "Chaplaincy Training Courses" in Florida and other states, as well as abroad. Dos Santos advertised his "Chaplaincy Training Courses" by transmitting the course announcements in interstate and foreign commerce over the Internet.

Federal agents interviewed multiple individuals who attended one of these courses in Clermont, Lake County, Florida (within the Middle District of Florida). During these types of courses, Dos Santos falsely told participants (many of whom

were immigrants) that CEMA partnered with FEMA and that CEMA and its courses were endorsed by FEMA. The courses were free to attend, but CEMA charged attendees approximately $400 to $450 to receive a chaplaincy certificate. After attendees completed the course and paid the associated fees, Dos Santos provided them with an identification ("ID") card, course completion certificates, and law enforcement badges—all containing government seals that had been fraudulently made, forged, counterfeited, and altered. Dos Santos told the attendees that the ID cards and badges authorized them to support law enforcement during emergency situations and take control of emergency situations until law enforcement arrived. He also fraudulently told them that their status as CEMA chaplains would give them a level of immunity from immigration enforcement and would keep them safe from deportation.

Below are photographs of one of the ID cards and certificates that Dos Santos provided attendees. As shown in the photographs, the front of the ID card contains one of CEMA's logos, which is a counterfeit DHS seal, altered to state, "U.S. Department of Homeland Chaplain." The back of the ID card contains a fraudulently made and forged DHS/FEMA seal (with no alterations). The certificates contain a slightly different version of the CEMA logo—an older version of the FEMA seal, altered to state, "U.S. Department of Homeland Chaplain"—and a fraudulently made and forged FBI seal. Neither Dos Santos nor CEMA have authorization to use the

seals of DHS, FEMA, or FBI, nor are they otherwise affiliated with DHS, FEMA, FBI, or any other agency of the federal government.








THE TRUSTEES OF

CHAPLAIN EMERGENCY MANAGEMENT AGENCY

EMERGENCY CHAPLAIN MANAGEMENT INSTITUTE

EMERGENCY CHAPLAIN DISASTER MANAGEMENT

IN THE CITY OF WASHINGTON DISTRICT OF COLUMBIA

TO ALL PERSONS TO WHOM THESE PRESENTS MAY COME GREETING

BE IT KNOWN THAT

[redacted]

HAVING COMPLETED THE STUDIES AND SATISFIED THE REQUIREMENTS FOR THE CERTIFICATE OF

*Emergency Chaplain Critical Responder*

HAS ACCORDINGLY BEEN ADMITTED TO THAT CERTIFICATE WITH ALL THE RIGHTS PRIVILEGES AND IMMUNITIES THERE UNTO APPERTAINING IN WITNESS WHERE OF WE HAVE CAUSED OUR CORPORATE SEAL TO BE HERE AFFIXED IN THE CITY OF WASHINGTON DISTRICT OF COLUMBIA ON THE TENTH DAY OF MARCH IN THE YEAR OF OUR LORD TWO THOUSAND AND TWENTY FIVE WASHINGTON DISTRICT OF COLUMBIA UNITED STATES OF AMERICA

*Peterson Macarthur*



THE TRUSTEES OF

FEDERAL BUREAU OF INVESTIGATION (FBI)

DEPARTMENT OF HOMELAND SECURITY (DHS)

CHAPLAIN EMERGENCY MANAGEMENT AGENCY (CEMA)

IN THE CITY OF WASHINGTON DISTRICT OF COLUMBIA

TO ALL PERSONS TO WHOM THESE PRESENTS MAY COME GREETING BE IT KNOWN THAT

[redacted]

HAVING COMPLETED THE STUDIES AND SATISFIED THE REQUIREMENTS FOR THE CERTIFICATE OF

*Counter-Terrorism for Emergency Responders*

DEDICATED TO PREVENTING TERRORIST ATTACKS WITHIN THE UNITED STATES REDUCING AMERICA'S VULNERABILITY TO TERRORISM AND PROTECTING THE AMERICAN PEOPLE FROM TERRORIST THREATS AND MINIMIZING THE DAMAGE FROM POTENTIAL ATTACKS AND NATURAL DISASTERS

ISSUED THIS 10TH DAY OF MARCH 2025 WASHINGTON D.C

UNITED STATES OF AMERICA

*Frank Hugges*

Dos Santos also had various CEMA merchandise for sale at the training, including polo shirts, bumper stickers, jackets, badges, and badge holders—all bearing either the DHS or FEMA seal. Some of the interviewees purchased merchandise and paid for it via Zelle[1] using Dos Santos's telephone number. One of the interviewees also paid $35 for what Dos Santos falsely claimed was an FBI background check. This fee was also paid via Zelle using the same phone number. Below are screenshots from a video, provided by one of the interviewees, showing some of the merchandise:




[1] Zelle is a digital payment network that allows users to send and receive money directly between U.S. bank accounts using the end user's phone number or email address. It can be used through the bank's mobile app or the Zelle website.







Attendees were also given access to an online CEMA WhatsApp[2] group chat, which Dos Santos used to communicate with them and promote upcoming courses, including by sending digital flyers of such courses. At the time the interviews were conducted, the group had more than 750 members. The phone number used by Dos Santos to communicate in the WhatsApp group is the same phone number he used for the Zelle transactions.

On September 27, 2025, federal agents conducted an undercover operation at a CEMA training course held on that date from 8:00 a.m. to 5:00 p.m. in Orlando,

[2] WhatsApp is a provider of wire and electronic communications. Specifically, WhatsApp is an Internet-based multiplatform messaging application that enables users to communicate with each other via text, voice, and video, as well as exchange photos and other files. WhatsApp is owned by Meta Platforms, Inc. ("Meta") and uses Meta's servers to transmit communications. WhatsApp does not use servers located in Florida to transmit communications; rather, they are transmitted over the Internet by servers located outside of Florida.

Florida, within the Middle District of Florida. As part of the operation, an FBI Confidential Human Source ("CHS") attended the training and was equipped with audio and video recording equipment. One of the individuals that DHS OIG interviewed regarding the course in Clermont ("W1") also attended and assisted agents in the operation.

Approximately 30 to 45 individuals attended the training. Dos Santos discussed the importance of being a member of CEMA and the prestige that came with being a CEMA chaplain. He showed multiple videos and discussed various topics, including active shooter situations and the terrorist attacks of September 11, 2001. One of the event's speakers, who presented himself as a police officer, spoke about counterterrorism and conducted a presentation with the FBI seal. He showed attendees his CEMA badge and ID card and told them that he always carries his CEMA badge, even while on duty.

During the event, W1 had a conversation with a CEMA volunteer, who stated that her CEMA badge had helped her get through airport security with no issues and that because she displayed her CEMA badge, she did not have to pay for extra luggage. The CEMA volunteer also told W1 that having her CEMA shirt inside her suitcase made a difference when airport security scanned her luggage.

Consistent with witness statements, Dos Santos charged $450 for the chaplaincy certification, which as noted above, contained fraudulent seals of DHS and FBI. He also had various merchandise for sale, all fraudulently bearing the DHS seal and/or

CEMA logo. At the conclusion of the training, the CHS purchased some of these items; specifically, a badge, an ID card holder, a bumper sticker, and a polo shirt:



***ID Holder with DHS Seal***




***Bumper Sticker with DHS Seal and Altered FEMA Seal***




***Badge with FEMA Seal***




***Polo Shirt with Altered Seals***

As part of the undercover operation, the CHS obtained access to the WhatsApp group referenced above, which, as noted, Dos Santos used to communicate with course attendees and promote upcoming courses. On December 17, 2025, for example, Dos Santos sent via WhatsApp a message containing an image of a digital flyer advertising one of his fraudulent CEMA "Chaplaincy Training Course" being held on December

20, 2025, in Orlando, Florida. This message, which was transmitted by Dos Santos in interstate and foreign commerce over the Internet, was received by the CHS and others in the Middle District of Florida. It is shown below:



Examples of other flyers sent by Defendant via WhatsApp are included below:
























WhatsApp is owned by Meta Platforms, Inc. ("Meta") and uses Meta's servers to transmit communications. WhatsApp does not use servers located in Florida to transmit communications; rather, they are transmitted over the Internet by servers located outside of Florida.

In sending the above message on December 17, 2025, via WhatsApp, Defendant transmitted a writing, sign, signal, or picture by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme and artifice described herein and in the Superseding Information.

According to business records on file with the Massachusetts Corporations Division, CEMA is a non-profit corporation founded on September 13, 2022. The four Annual Reports (2022 through 2025) filed by CEMA list "MARIO C Dos Santos" as the organization's President and Director. The latest filing is a "Certificate of Change of Directors or Officers," filed on October 17, 2025, which lists "MARIO C Dos Santos" as the organization's President, Treasurer, Clerk, and Director.

Records subpoenaed from Zelle show that the phone number Dos Santos provided for the payment of fees and merchandise belongs to him. The records revealed numerous transactions with "payment memos"[3] referencing CEMA (e.g., "chaplain course," "chaplain equipment," "certification – cema," "CEMA"). A number of these transactions are from the date of the CEMA training in Lake County and corroborate the statements of witnesses regarding their purchases at the training.

CEMA's website displayed the CEMA logo, which as noted above, is an altered version of the DHS logo. The website also falsely identified CEMA as an "agency of the United States" in various places, including its main homepage. The website falsely claimed that CEMA was "fully accredited by the International Association for

[3] Zelle users can add a "memo" or note to a transaction to explain its purpose.

Continuing Education and Training (IACET) and the American Council on Education (ACE)." It identified Dos Santos as CEMA's CEO and Vice President and falsely claimed that CEMA was founded in 1980 by the "Presidential Reorganization Plan No. of 1980 and implemented by two Executive Orders on April 1, 1982." As explained above, official records filed with the Massachusetts Corporations Division indicate that CEMA was founded on September 13, 2022. Screen captures of the website are shown below:






Dos Santos also used CEMA's logo on CEMA's public social media profiles on Facebook and Instagram. These profiles also contained numerous photographs of events and/or trainings using government seals.




***Screenshot of Instagram Page (Feb. 23, 2026)***




***Screenshot of Facebook Page (Feb. 23, 2026)***

On January 30, 2026, a Criminal Complaint (Doc. 1) was filed charging Dos Santos with violating 18 U.S.C. § 506(a)(2). On February 19, 2026, Dos Santos traveled from Boston to Orlando for a CEMA training that was scheduled for February 21. He was arrested at the Orlando International Airport upon landing. At the time of his arrest, Dos Santos was wearing a CEMA polo shirt (like the one purchased by the CHS and shown above) with the DHS seal on the sleeve and chest.